DocuSign Envelope ID: 38B39D45-F258-4D6D-96BF-BAF66D66F948

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

**KAREN FRANCIS**, Individually, and
on Behalf of All Others Similarly Situated,

Plaintiff,

Case No. 2:16-cv-01477-PP

v.

**MANPOWERGROUP US INC, AND**
**EXPERIS US, INC.,**

Defendants.

---

**DECLARATION OF CHEYANNE TATUM**

---

I, CheyAnne Tatum, do hereby swear, affirm, and attest as follows, based upon my personal knowledge of the matters contained herein:

1. My name is CheyAnne Tatum and I am over the age of eighteen (18) and duly qualified to execute this declaration.

2. I am currently a resident of Washington.

3. From about February 23, 2015 until August 15, 2016, I was employed by ManpowerGroup US Inc. and Experist US, Inc., d/b/a ManpowerGroup Solutions as an Associate Recruiter, which was also called "Recruiting Consultant."

4. As an Associate Recruiter, I was classified as an hourly, non-exempt employee and was entitled to overtime pay if I worked more than forty (40) hours in a workweek.

5. Despite being entitled to overtime pay, I regularly worked more than forty (40) hours in a workweek without being paid for all the hours I worked.

6. As an Associate Recruiter, my job was to use a pre-determined script when speaking with candidates for sales positions with Comcast/Xfinity and match their answers to a pre-determined list of criteria.

7. If the answers matched the pre-determined criteria, I would submit the candidate to Comcast/Xfinity for review.

8. I was provided with a variety of different scripts and form emails to use in all aspects of my interactions with candidates.

9. Much of my work was done through various Google platforms, i.e. Google Docs, Google Chat, etc.

10. I also used a ManpowerGroup Solutions system called Avature that tracked candidates.

11. Avature would track a candidate from the initial lead source through the conclusion of that lead.

12. Each day, I was required to submit to Comcast/Xfinity at least three candidates for review.

13. This required a large volume of calls because based on the hiring criteria the candidates had to both fit the pre-determined criteria that the company mandated and had to be interested in pursuing a job with Comcast/Xfinity.

14. Submitting three candidates for review to Comcast/Xfinity each day was unrealistic to complete in a forty (40) hour workweek.

15. Despite the demands of the job, the handbook I was given stated that the job was for forty (40) hours per week and overtime was only permitted with prior approval of a manager or lead.

16. To meet my daily quota of three submits, I regularly had to work outside of regular business hours and on the weekends.

17. I performed this work remotely from my home.

18. Each day, I was required to self-report the total number of hours I worked pursuant to the guidelines outlined for Associate Recruiters in the handbook provided to me by management.

19. I was only compensated for the hours I recorded.

20. According to the handbook, I was not allowed to record overtime without prior approval.

21. In fact, my manager, Rachel Boyd, told me on multiple occasions that overtime was not permitted on this account, even though she knew overtime was required to do the job.

22. Rachel Boyd was aware that there was no way I could complete all of my duties in an eight (8) hour day. I told her so, as well as other Associate Recruiters on the Comcast/Xfinity account. They too were in agreement that the job took more than eight (8) hours a day to complete.

23. Even still, I was not allowed to record more than eight (8) hours in a day, but I was still expected to complete the work no matter how long it took.

DocuSign Envelope ID: 38B39D45-F258-4D6D-96BF-BAF66D66F948

24. I did not record my overtime hours, or request to be paid for those hours, since Rachel Boyd reiterated on team calls that overtime was not permitted and the handbook prohibited recording overtime without permission.

25. Despite not being permitted to record my overtime hours, Rachel Boyd knew I was working overtime hours.

26. I was not paid for those overtime hours as I was not permitted to record them.

27. Since I did not have permission to record the hours I actually worked, I was not paid for all of the hours I worked.

28. Rachel Boyd had approximately thirty-five (35) Associate Recruiters working under her at any given time recruiting sales people for Comcast/Xfinity.

29. Each of us had to abide by the same handbook and policies and practices.

30. That handbook stated that our job was to be for forty (40) hours with overtime only permitted with prior approval.

31. Rachel Boyd stated overtime was not allowed on this account.

32. I heard other Associate Recruiters on group calls also talk about the time needed to do the job and having to work more than forty (40) hours in a week.

33. While we did not discuss our pay, based on my own experiences and the policies articulated both in the handbook and by Rachel Boyd, I assume that my colleagues were also not being paid for their overtime hours.

DocuSign Envelope ID: 38B39D45-F258-4D6D-96BF-BAF66D66F948

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed 3.2.17

DocuSigned by:
Chey Anne Tatum
FE9F808AF5DA43F...
CheyAnne Tatum