UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**KAREN FRANCIS**, Individually, and on Behalf Of All Others Similarly Situated,

Plaintiff,

v.

Case No. 2:16-cv-01477-PP

**MANPOWERGROUP US INC, AND EXPERIS US, INC.,**

Defendants.

---

# DECLARATION OF RACHEL BOYD

I, RACHEL BOYD, hereby declare and state as follows:

1. I am over 18 years of age and competent to testify to the matters stated in this Declaration. I have personal knowledge of the facts attested to in this Declaration.

2. I am currently employed by Defendant Experis US, Inc. as a Director of Client Delivery within the company's Recruitment Process Outsourcing ("RPO") organization. I started my employment with RPO in February 2012 as an hourly Recruiter Consultant. I was promoted to a salaried Senior Recruiter or "Specialist" position at some point in 2013. In May of 2014, I was promoted to a Program Delivery Lead position. In 2015, I was promoted to a Program Manager position, which I held until my promotion to my current Director of Client Delivery role in June of 2016.

3. As a Program Manager, I was responsible for managing a "Program" or specific segment of recruitment outsourcing business with RPO's client, Comcast. Internally, we refer to that particular program as "RPO Comcast West Sales." In that position, I directly supervised



EXHIBIT
3

Program Delivery Leads who, in turn, directly supervised a team of recruiters which included both hourly non-exempt Associate Recruiters, and salaried exempt Senior Recruiters. Associate Recruiters are sometimes referred to as "Recruiter Consultants," and Senior Recruiters are sometimes referred to as "Specialists."

4. RPO maintains several separate segments of business or "Programs" with Comcast, and each one is overseen by a different Program Manager or Director. After my promotion to a Director of Client Delivery position, I maintained responsibility for the RPO Comcast West Sales Program I previously managed as a Program Manager. However, after my promotion, I gained a new client account and new, expanded responsibilities.

5. The recruiters within the RPO Comcast West Sales Program I oversee are responsible for recruiting candidates for door-to-door sales representative and retail store employee positions with Comcast. These Comcast positions are filled on a hiring "class" basis. In other words, RPO recruiters who service this Program are expected to search for, identify, screen and propose to Comcast as many qualified candidates as it will take to fill each hiring "class." Consequently, the recruiting needs for this Comcast Program can be considered "high volume" in comparison to other clients' Programs.

6. Associate Recruiters who support the RPO Comcast West Sales Program are responsible for reviewing applications and resumes submitted by candidates in response to advertisements we place for the open sales representative and retail store positions for Comcast. In addition to reviewing applications and resumes submitted by interested candidates, these recruiters are also expected to engage in "active recruiting" by searching for, and identifying "passive candidates."

7. Passive candidates are those who have not applied for the open position, but who

have posted their resumes online and appear to meet the qualifications for the role. Recruiters can identify passive candidates for these positions by searching online job boards or using any other appropriate sourcing avenues, for examples, from referrals, from searching LinkedIn or other social media platforms, or from attending job fairs. After the recruiter identifies a passive candidate she believes is a good fit for a position the recruiter is trying to fill, he or she will contact the candidate to inform them of the available position, to educate the candidate about the position and the benefits of working for Comcast, and to ultimately assess the candidate's interest in the position.

8. These recruiters are also responsible for conducting an initial screening interview by telephone with each candidate. During this screening interview, the recruiter is expected to confirm information about the candidate's qualifications for the position, to answer any questions the candidates have about the position or the client's culture, to identify any areas of concern or "red flags" regarding the candidate, and to generally assess whether the recruiter believes the candidate would be a good "fit" for the client's expectations. Based on the screening interview, the recruiter will either reject the candidate, or submit the candidate for further consideration.

9. Once candidates are submitted to the client, recruiters are also responsible for communicating with the candidate about the process, and providing him or her with any required assessments for the position as well as instructions for completing the assessment. The recruiter is then expected to help prepare the candidate for the potential interview with the client's hiring manager.

10. While candidates are still in consideration for any position with the client, the recruiters are expected to keep in contact with the candidate to ensure the candidate is aware of

the status of the process and is maintaining interest in the position. If a candidate is not selected by the client's hiring manager, the hiring manager provides feedback to the RPO team about the candidate's interview performance and the hiring decision. The recruiter is then responsible for informing the candidate that he or she has not been selected for the position, and explaining the feedback from the client regarding the hiring decision. The recruiter is expected to communicate this feedback to the unsuccessful candidates in sufficiently specific, tactful, and respectful manner.

11. Senior Recruiters assigned to the RPO Comcast West Sales Program also work to identify, screen, prepare, and recommend qualified candidates for the client's open positions. However, Senior Recruiters are typically expected to fill higher–level positions for the client, to exercise more discretion with respect to the sourcing strategies they use to identify qualified candidates, and in contrast to the Associate Recruiters, Senior Recruiters' recommendations and sourcing methods are generally subject to little to no review by the Program Delivery Lead. Senior Recruiters also are asked to serve as mentors or training resources for new recruiters and may be assigned responsibility for preparing training materials and ensuring all recruiters are trained on specific topics.

12. I also have Senior Recruiters who are assigned to work at the client's place of business. These Senior Recruiters are also expected to assist our team in maintaining a good client relationship. They do this through their ongoing and significant communication with Comcast West Sales Hiring Managers regarding the client's expectations, and candidate feedback.

13. Finally, Senior Recruiters are frequently assigned additional analysis and reporting responsibilities regarding the team's metrics, prioritization of workload, and sourcing

strategies—including identifying and recommending new and innovative opportunities or methods for sourcing candidates.

14. The RPO Comcast West Sales Program recruiter team is generally asked to meet certain weekly goals to ensure they are consistently meeting the client's staffing needs by identifying, screening, and submitting a sufficient number of qualified candidates for each hiring class. In some markets, recruiters are relieved of these goals if they are too difficult to meet.

15. Hourly Associate Recruiters who work on the RPO Comcast West Sales Program are expected to record and submit the time they work each day through the PeopleNet timekeeping software interface.

16. Hourly recruiters who work on the RPO Comcast West Sales Program are neither expected, nor required to work more than 40 hours per week. This position, and the productivity expectations on this Program, are designed so that they can be accomplished by working no more than 40 hours a week. Therefore, I created a Handbook for my team which specified that my recruiters' assignment required only 40 hours per week, and no more. A true and correct copy of this Handbook I created is attached hereto as exhibit A. This Handbook was not provided to any RPO recruiters other than the ones assigned to my Program.

17. The Handbook I created was not intended to replace or supersede RPO's policy with respect to overtime for non-exempt employees. More specifically, RPO's states that employees will be paid for all time worked, including overtime, even if that time was not was not authorized in advance by a supervisor.

18. While employees in my Program are not expected or required to work more than 40 hours a week to fulfill their obligations, I know that other Programs are designed differently.

19. I supervised Plaintiff Karen Francis during much of her employment with RPO.

More specifically, as a Program Delivery Lead, I directly supervised Plaintiff Francis after she promoted from an Associate Recruiter to a Senior Recruiter position in November 2014. I continued to supervise Plaintiff Francis after I was promoted to a Program Manager position in 2015, and after she was promoted to a Program Delivery Lead role in April 2015.

20. The expectation that Plaintiff Francis work no more than 40 hours per week on the RPO Comcast West Sales Program remained the same even after she was promoted to a Senior Recruiter role.

21. Plaintiff Francis was not assigned to physically work at one of Comcast's sites. Instead, she worked remotely from her home. In contrast, there are typically four or five RPO recruiters in my RPO Comcast West Sales Program who are assigned to physically work at a Comcast site, and who have enhanced obligations for client relationship-building.

22. I don't recall Plaintiff Francis having any difficulties regularly reaching her daily or weekly goals during her time as an Associate Recruiter or as a Specialist. I also don't recall Plaintiff Francis ever requesting overtime, or informing me that she believed she needed to work more than 40 hours in a week to meet her goals.

23. Plaintiff Francis never told me she needed to work, or actually ever worked more than 40 hours per week during her time as an Associate Recruiter. Similarly, after her promotion to a Program Delivery Lead position, Plaintiff Francis never told me any of the hourly Associate Recruiters she supervised told her they were unable to meet their goals within the expected 40 hour workweek, or had otherwise told her they needed to work, or actually worked more than 40 hours per week.

24. Plaintiff Chey Anne Tatum also worked as an Associate Recruiter on the RPO Comcast West Sales Program from approximately February 23, 2015 until August 15, 2016. Like

Plaintiff Francis, Plaintiff Tatum worked remotely from her home. Plaintiff Tatum was supervised by Program Delivery Lead Marisol Tejada, who reported to me.

25. Plaintiff Tatum consistently struggled to meet the goals and expectations in this Program. Ms. Tejada and I ultimately concluded that while Plaintiff Tatum had some valuable skills as a recruiter, she was not well-suited to the high-volume nature of the recruitment workload of the RPO Comcast West Sales Program. Consequently, we removed Plaintiff Tatum from the RPO Comcast West Sales Program, and recommended she be reassigned to another RPO Program which would not be considered high volume.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following is true and correct.

EXECUTED this 23 day of March of 2017.

Rachel Boyd

RACHEL BOYD

29096662.1