UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KAREN FRANCIS,

        Plaintiff,

   v.

                                    Case No. 16-cv-1477-bhl

MANPOWERGROUP US INC,
EXPERIS US INC,

        Defendants.

## DECISION AND ORDER

Plaintiff Karen Francis brings this individual and collective action against defendants ManpowerGroup US Inc. and Experis US Inc. under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §201 *et seq.*, for unpaid overtime compensation. (ECF No. 1.) Francis filed a motion for conditional certification and court-authorized notice to potential opt-in plaintiffs under FLSA section 216(b).[1] (ECF No. 19.) After the motion was fully briefed, on October 15, 2020, the Court held a status conference, and took the motion under advisement. The Court will now grant Francis's motion for conditional certification *in part* and, consistent with discussions at the status conference, refer the case to a magistrate judge for mediation.

## FACTUAL BACKGROUND

Defendants ManpowerGroup US Inc. and Experis US Inc., (collectively Experis) are affiliated human resource companies headquartered in Milwaukee, Wisconsin. (ECF No. 14.) Among other things, Experis provides talent acquisition and recruiting services to clients through a division known as Recruiting Process Outsourcing (RPO). (ECF No. 23-1.) RPO services are

---

[1] The motion also purports to be made by CheyAnne Tatum, who filed a Notice of Consent to Join Lawsuit just before the conditional certification motion was filed. (ECF No. 18.) The Court has not granted permission to amend the complaint to add Tatum as a second plaintiff and it was premature for her to opt-in to any class prior to conditional certification. *Cf. Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) ("The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be…given the opportunity to opt in to the collective action."). Accordingly, the Court will treat Francis as the sole moving plaintiff.

managed through individualized units, called Programs, developed specifically for each client. (*Id.*)  Between October 2013 and March 2017, RPO operated 164 distinct Programs and engaged 2,476 employees.  (*Id.*)  Each RPO Program is designed to meet a client's talent acquisition need and has its own separate goals, recruitment parameters, and management schemes; some clients are even allotted multiple RPO Programs.  (*Id.*)

Experis employs two kinds of recruiters in its RPO Programs:  (1) hourly, nonexempt Associate Recruiters; and (2) salaried, exempt Senior Recruiters, also referred to as Recruiting Specialists.  (ECF No. 23, 23-1, 23-4.)  The duties and, accordingly, compensation of Associate Recruiters and Senior Recruiters vary across RPO's Programs.  (*Id.*; *see* ECF No. 23-3, 23-6.)  Because Associate Recruiters are classified as nonexempt, they are eligible for overtime compensation.  (ECF No. 23-1.)  In the three years prior to the conditional certification motion, Experis reports that almost half (42%) of RPO's nonexempt employees received some overtime compensation.  (*Id.*)

Francis worked for RPO's Comcast West Program under the management of Client Delivery Director Rachel Boyd.  (ECF No. 20, 23-1, 23-4.)  According to Francis, she served for almost four years as an Associate Recruiter, followed by a five-month stint as a Senior Recruiter.  (ECF No. 20.)  All recruiters in the Comcast West Program were given performance quotas to meet and were expected to record their time spent working towards those quotas in an internal software program.  (ECF No. 23-4.)  The recruiters were also required to follow the policies articulated in a handbook created and distributed by Boyd.  (*Id.*; ECF No. 23-1.)

During the relevant time period, Associate Recruiters in the Comcast West Program were responsible for reviewing application materials submitted by candidates and searching for additional potential candidates online and in person.  (ECF No. 23-4.)  Associate Recruiters reporting to Boyd conducted screening interviews before referring the candidate to Comcast and followed up with referred candidates about the hiring process.  (*Id.*)  After referred candidates were interviewed by Comcast, Associate Recruiters were tasked with informing rejected candidates of their unsuccessful attempt.  (*Id.*)  The Boyd handbook instructed Associate Recruiters to work no more than forty hours a week and prohibited overtime hours unless they had been approved in advance by a manager.  (ECF No. 23-2.)  This was not the case for recruiters in other RPO programs, not managed by Boyd.  (ECF No. 23, 23-1, 23-7.)

Senior Recruiters in the Comcast West Program also reviewed application materials and identified potential candidates for open positions, but their work was subject to little or no review by management. (ECF No. 23-4.) Some of Boyd's Senior Recruiters were tasked with preparing training materials and serving as mentors for new recruiters, others were placed in Comcast's place of business to maintain a good working relationship and open communication with the client, and some Senior Recruiters were assigned duties to analyze and report on the team's metrics, prioritization of workload, and sourcing strategies. (*Id.*)

As an Associate Recruiter, Francis alleges she was limited to reporting only eight hours of work each workday even though she often worked longer than eight hours and on weekends to meet her position's performance quotas. (ECF No. 20.) As a salaried Senior Recruiter, Francis explains she was considered exempt and ineligible for overtime even though she regularly worked more than forty hours a week and performed essentially the same job duties she had as an Associate Recruiter. (*Id.*)

## ANALYSIS

The Fair Labor Standards Act permits the filing of collective actions "against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b). Such an action requires potential employee plaintiffs to "opt in" to the collective by filing a written consent to join the action, in contrast with a class action permitted under Rule 23, which requires potential plaintiffs to "opt out" of the action. *Id.*; Fed. R. Civ. P. 23; *see Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 n.1 (7th Cir. 2020) (explaining the differences between a collective action under FLSA and a class action under Fed. R. Civ. P. 23).

On March 3, 2017, Francis moved for conditional certification of two classes of employees:

> (a) All current and former non-exempt hourly Associate Recruiters, Recruiting Consultants, Contract Recruiters, and/or other non-exempt hourly recruiters who worked for ManpowerGroup US Inc. and/or Experis US, Inc. both d/b/a ManpowerGroup Solutions at any time during the last three years.
>
> (b) All current and former salaried Recruiting Specialists who worked for ManpowerGroup US Inc. and/or Experis US, Inc. both d/b/a ManpowerGroup Solutions at any time during the last three years.

(ECF No. 19.)

District courts have discretion to facilitate notice to potential plaintiffs in a FLSA collective action to implement the "opt in" procedure. *Bigger*, 947 F.3d at 1046-47 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989)). "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

In making this determination, courts generally follow a two-step approach. *Mitchell v. Trilliant Food & Nutrition, LLC*, No. 19-C-147, 2020 WL 1181945, at *1 (E.D. Wis. Mar. 12, 2020). In step one, the court must determine whether the plaintiff has made "a modest factual showing" of a common policy or nexus between her and the proposed collective, thus establishing "a 'reasonable basis' for believing that she is similarly situated to potential" plaintiffs sufficient to warrant sending notice to the collective with an opportunity to "opt in" to the action. *Krupp v. Impact Acquisitions LLC*, No. 14-C-950, 2016 WL 7190562, at *4-*5 (E.D. Wis. Dec. 12, 2016) (citing *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *3-*4 (E.D. Wis. Sept. 11, 2008)). Step two usually occurs on the defendant's motion for decertification and requires a court to determine if, in fact, the opted-in plaintiffs are similarly situated. *Mitchell*, 2020 WL 1181945, at *2.

**1. The Record Does Not Support the Overly Broad Classes that Francis Proposes.**

Francis asserts that she has met the minimal burden of establishing that the other potential plaintiffs in her proposed classes are similarly situated to her. (ECF No. 22.) Specifically, Francis claims that Experis subjects all its Associate Recruiters to ambitious quotas that cannot be met in the time given while also imposing a *de facto* prohibition on overtime compensation. (ECF No. 20, 22.) She also claims that all of Experis's salaried Senior Recruiters were misclassified as exempt from earning overtime compensation, despite having essentially the same duties as Associate Recruiters, and that Experis exploited this misclassification to avoid paying its Senior Recruiters overtime compensation. (*Id.*)

Experis has provided undisputed and compelling evidence concerning the organization of its RPO division that shows the management policies governing the Comcast West Program were limited to that Program. (ECF No. 23, 23-1, 23-4.) Experis has also explained that the duties and compensation of Senior Recruiters vary across different Programs and argues that the

duties of all Senior Recruiters require the discretion necessary to be classified as exempt from overtime compensation. (ECF No. 23, 23-1, 23-3, 23-4, 23-7.)

Based on the record, Francis has not proved a common policy or nexus with either of her proposed classes. Simply put, she has not shown that she is similarly situated to *all* Associate Recruiters or Recruiting Specialists employed by Experis. To the contrary, Experis has presented compelling evidence to show that the RPO Programs are run and managed on an individualized basis. The Court will not conditionally certify the two classes proposed by Francis.

### 2. The Record Does Support Conditional Certification of Narrower Classes, Limited to the Comcast West Program in which Francis Was Employed.

Rejecting Francis's proposed classes does not end the matter, however. The Court has the power and responsibility to define "the scope of the potential FLSA collective action." *Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017). The Seventh Circuit has emphasized the district court's duty to "assess [plaintiff's] proposed definition and assure itself that the employees identified are raising similar FLSA claims. In exercising this power, district courts do not hesitate to pare down the group or to deny conditional certification altogether." *Id.*

The record establishes that Francis is sufficiently similarly situated to other Associate Recruiters and Senior Recruiters *within the Comcast West Program.* With respect to the Associate Recruiters, the record shows a common governing policy (the Boyd handbook) that uniformly applied to all Associate Recruiters working in the Comcast West Program. Francis has also established that the other Associate Recruiters in the Comcast West Program were required to meet the same performance quotas and suffered the same burdens. With respect to Senior Recruiters, Francis asserts (and Boyd confirms) that all Senior Recruiters in the Comcast West Program were subject to the same performance quotas and governing policies articulated in the Boyd handbook. Boyd also confirms that all Senior Recruiters in the Comcast West Program have the same primary duty as Associate Recruiters: sourcing and shepherding potential candidates through the hiring process for open positions with Comcast. Boyd's assertions that some Senior Recruiters also act as mentors, physically work at the client's place of business, or analyze and report on the team's performance do not detract from Francis's claims or erode her evidentiary support. Instead, Boyd's assertions serve to bolster Francis's claims because none of those extra duties seem to qualify the role of Senior Recruiter in the Comcast West Program as administratively exempt from earning overtime under FLSA's regulations.

Accordingly, the Court will conditionally certify narrowed versions of the two classes Francis has proposed. Both proposed classes are modified and limited to employees holding the same positions as Francis in the Comcast West Program.

### 3. Court-Authorized Notice

Francis has attached a proposed "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" forms to her motion. (ECF No. 19-1.) She asks the Court to authorize the circulation of the proposed notice via first-class mail and email to the potential plaintiffs in the conditionally certified collective, and to send them a text message. (*Id.*; ECF No. 19-2.) She seeks contact information for the collective's members from Experis by way of an order requiring them to produce their names, last-known addresses, phone numbers, email addresses, and the last four digits of their Social Security numbers. (*Id.*) Francis also asks the Court to order Experis to produce the job titles and dates of employment of the collective's members. (*Id.*) Experis did not respond to this portion of Francis's motion.

This Court has discretion to implement the opt-in provision of FLSA section 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989) ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."). However, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

The Court will grant Francis's motion for an order requiring Experis to produce the information requested for each potential plaintiff in the two conditionally certified collectives as modified by the Court. The Court finds that the information requested will aid in the orderly and sensible management of the joinder process. However, the Court will require plaintiff's counsel to submit amended proposed forms and an updated text message for Court-approval, consistent with the terms of this decision.

At the October 15, 2020 status conference, the parties briefly discussed whether and how equitable tolling should apply to the claims of the potential opt-in plaintiffs. The Court declined to address the issue at that time because it had not yet been briefed. Because the matter of

equitable tolling is still not properly before the Court, the Court declines to rule on that issue in this Order.

## CONCLUSION

**IT IS HEREBY ORDERED**:

1. Plaintiff's motion for conditional certification, ECF No. 19, is **GRANTED in part**. The Court conditionally certifies the plaintiff's two classes as:

    a. All current and former non-exempt hourly Associate Recruiters, Recruiting Consultants, Contract Recruiters, and/or other non-exempt hourly recruiters who worked for ManpowerGroup US Inc. and/or Experis US Inc., both d/b/a ManpowerGroup Solutions, in the RPO organization's Comcast West Program; and

    b. All current and former salaried Recruiting Specialists and/or Senior Recruiters who worked for ManpowerGroup US Inc. and/or Experis US Inc., both d/b/a ManpowerGroup Solutions, in the RPO organization's Comcast West Program.

2. Within seven days of the date of this Order, plaintiff shall file amended proposed "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" forms to replace ECF No. 19-1, and an amended proposed text message to replace ECF No. 19-2. Defendants will then have seven days to file a response containing their objections, if any, to the proposed forms and text message.

3. Once the modified forms and text message are approved by the Court, putative FLSA collective members shall have sixty (60) days from circulation of the notice via first class mail, email, or text message, whichever occurs first, to file their written consent forms.

4. Within fourteen days of the date of this Order, the defendants shall provide plaintiff's counsel with an electronic and importable database containing the following information for each potential member of the two classes: full names, last known addresses, dates of employment, job titles, phone numbers, email addresses, and the last four digits of their Social Security numbers.

5. This case will be referred for mediation in a separate Order.

Dated at Milwaukee, Wisconsin on January 26, 2021.

s/ Brett H. Ludwig<br>
BRETT H. LUDWIG<br>
United States District Judge